IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELMER E. MORROW,                )
                                )
          Plaintiff,            )
                                )
     v.                         )    Civil Action No. 05- 837
JO ANNE B. BARNHART,            )
COMMISSIONER OF SOCIAL SECURITY,)
                                )
          Defendant.            )

MEMORANDUM ORDER

CONTI, District Judge

### *Introduction*

Pending before the court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claim of Elmer E. Morrow ("plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–433. Plaintiff asserts that the failure of the administrative law judge (the "ALJ") to weigh properly the determination of the United States Department of Veterans Affairs ("VA") and the failure of the ALJ to include all of plaintiff's non-exertional impairments in the hypothetical question posed to the vocational expert (the "VE") are grounds for reversal. Defendant contends substantial evidence supports the ALJ's decision that plaintiff retains the ability to participate in a wide variety of gainful work. The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The court will grant defendant's motion for summary judgment because the decision of the ALJ is supported by substantial evidence.

*Procedural History*

Plaintiff filed his application for disability benefits on October 13, 2000,[1] alleging disability since January 14, 1997,[2] due to depression and bipolar disorder. (R. at 58-60, 126.) Plaintiff's claim was initially denied and a timely request for a hearing was filed. (R. at 50.) A hearing was held on July 13, 2001, before the ALJ. (R. at 22-38.) On September 6, 2001, the ALJ issued a decision denying plaintiff's claim for DIB. (R. at 9-12.) Plaintiff timely filed an appeal of the ALJ's decision. The Appeals Council, however, denied plaintiff's request for review on April 30, 2003, making the Commissioner's decision final. (R. at 6-7.)

Having exhausted all administrative remedies, plaintiff filed a complaint in the United States District Court for the Western District of Pennsylvania. (Civil Action No. 03-775.) By order dated July 30, 2004, the district court denied both parties' motions for summary judgment filed in that action, but granted plaintiff's alternative request to remand the case for further administrative proceedings. (R. at 248-53.) The remand was ordered because the ALJ relied on the Medical-Vocational rules (the 'grids") and failed to consider whether plaintiff's non-exertional impairments – namely his severe mental impairments – limited the number of jobs that he can perform. Id. On remand, the ALJ was to evaluate plaintiff's non-exertional impairments and the use of a vocational expert was recommended. Id.

Pursuant to this court's remand, the Appeals Council vacated the ALJ's September 6, 2001 decision and remanded the matter to the ALJ for further administrative proceedings. (R. at 254-

---

[1] With a protective filing date of September 29, 2000.

[2] Plaintiff had previously applied for DIB and that application was denied on December 15, 1997. Plaintiff, during the July 13, 2001 hearing before the ALJ, amended the alleged onset date of his disability to December 16, 1997. (R. at 26.)

55.) The period of disability at issue on remand was the period of time prior to the state agency determination that plaintiff was disabled on September 7, 2001[3] – namely, December 16, 1997 (the plaintiff's amended alleged onset date) through September 6, 2001. (R. at 254.)

On February 5, 2005, a hearing was held before the ALJ. Plaintiff appeared at the hearing and testified. (R. at 407.) The VE also testified. (R. at 415.) Plaintiff was represented by an attorney at the hearing. (R. at 406.) In a decision dated March 14, 2005, the ALJ determined that plaintiff was not disabled and, therefore, not entitled to benefits for the period January 10, 1997[4] through September 6, 2001. (R. at 229.) Plaintiff, having exhausted his administrative remedies, commenced the present civil action seeking judicial review.

## *Legal Standard*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. 42 U.S.C. § 405(g). This court must determine whether there is substantial evidence which supports the findings of the Commissioner. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F. 3d 900, 901 (3d Cir. 1995)(quoting Richardson v. Perales, 402 U.S. 389 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Burnhart, 312 F. 3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to

---

[3] While his complaint at Civil Action No. 03-775 was pending before the district court, plaintiff filed a subsequent application for DIB on May 22, 2003. Based upon this second application for disability benefits, plaintiff was found disabled as of September 7, 2001. (R. at 254.)

[4] While the ALJ referred to January 10, 1997, as the alleged onset date, the correct date for the alleged onset should be December 16, 1997.

substitute its own conclusions for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001)(reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry).

### *Plaintiff's Background and Medical Evidence* [5]

Plaintiff was born on January 17, 1960. As of September 7, 2001, plaintiff was forty-one years of age and considered a "younger individual" as defined by the applicable regulations. See 20 C.F.R. § 404.1563 (c). (R. at 58.) Plaintiff has been married twice, and has two children from his first marriage, a daughter and a son who died at age seven from brain cancer. (R. at 168.) Plaintiff has a high school education and past work experience as a groundskeeper, cashier, mechanic, cook, machine repairman, pizza delivery driver, warehouse laborer, tow truck driver, dishwasher, and auto mechanic. (R. at 13, 105-20.) Plaintiff had a long history of alcohol abuse, starting as a teenager. (R. at 202.) He became sober in 1994. Id. Additionally, plaintiff served in the United States Navy from 1979 to 1986 when he was honorably discharged. (R. at 168.)

Plaintiff asserts that his disability manifested in the form of severe depression and that since December 16, 1997, he has not performed any substantial gainful activity. Plaintiff has a long history of treatment with the VA, dating from 1988. (R. at 173). In 1992, the treating psychiatrist, Dr. Suman Ahuja, diagnosed plaintiff with major depression in remission and mixed

---

[5] By reason of the award of DIB to plaintiff retroactive to September 7, 2001, the background and medical evidence addressed in this memorandum order will be for the time period prior to that date. The impairments at issue during that period were plaintiff's mental impairments.

personality disorder and prescribed 200 mg Tegretol® [6] (an anticonvulsant medicine) and 50 mg Amitriptyline[7] (an antidepressant). (R. at 163.) According to plaintiff, he felt "strongly that this medication is helping him quite a lot." (R. at 164.)

Plaintiff moved to Florida from 1994 to 1997. He continued treatment at the Haley Veterans Affairs Medical Center in Tampa, Florida and continued to take his prescribed medication. (R. at 167.) When plaintiff returned to Pittsburgh, Pennsylvania in 1997 he was seen at the Veterans Affairs Medical Center located at Highland Drive in Pittsburgh, Pennsylvania (the "PA VAMC"). He reported that he was sleeping only three to four hours a night and that he felt a "little depressed." (R. at 168.) In February 1997, plaintiff was diagnosed with "[m]ajor depression vs bipolar affective disorder." Id. At the PA VAMC, plaintiff reported in May 1997 to Dr. Karen Kelly, a staff psychiatrist, and Lynelle Erickson, Ph.D., a clinical psychologist, that he was doing "reasonably well." (R. at 170.) Drs. Kelly and Erickson made no modifications to plaintiff's medications. Id.

In November 1997, C.M. Berschling, M.D., a psychiatrist, conducted a consultative psychiatric examination of plaintiff. (R. at 173-78.) Dr. Berschling determined that plaintiff's abstract thinking was adequate and that his memory was mostly intact. (Id. at 176.) Dr. Berschling noted that plaintiff could do all forms of calculations and "had no difficulty with serial subtractions. . . ." Id. In reference to plaintiff's social judgment, however, Dr. Berschling found it somewhat impaired, and that plaintiff was isolated and remote. Id. Dr. Berschling further

---

[6] See *Physician's Desk Reference*, 2279 (60th ed. 2006) (indications and usage of Tegretol®).

[7] See *Taber's Cyclopedic Medical Dictionary*, 89 (20th ed. 2005).

concluded that plaintiff could follow instructions, but could not follow a schedule or routine, and had difficulty making decisions. (R. at 177.) Dr. Berschling diagnosed plaintiff with recurrent major depression and mixed personality disorder. Id.

In December 1997, Douglas Schiller, Ph.D., a state agency medical consultant, reviewed plaintiff's file, but did not examine him. (R. at 183-89.) Dr. Schiller completed a psychiatric review technique form and concluded that plaintiff was only moderately limited in his abilities to maintain daily living and social functioning. (R. at 188.) Additionally, Dr. Schiller noted that plaintiff often experienced deficiencies of concentration, persistence, or pace, resulting in failure to complete tasks in a timely manner. Id. Plaintiff never, however, experienced episodes of deterioration or decompensation. Id.

In September 1998, plaintiff underwent a VA medical evaluation as part of an application for veteran's disability benefits. (R. at 190-92, VA Rating Decision.) Before the examination, the VA awarded plaintiff 50% disability benefits, effective September 11, 1996, by reason of a global assessment of functioning ("GAF") score of 65.[8] (Id.) As a result of the 1998 examination, the

---

[8] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. A GAF score of between 50-60 denotes moderate impairment. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000); see Lozada v. Barnhart, 331 F.Supp.2d 325, 330 n.2 (E.D. Pa. 2004). An individual with a GAF score of 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning;" of 50 may have "[s]erious symptoms (e.g., suicidal ideation . . . .)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" of 40 may have "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood; of 30 may have behavior "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment (e.g., . . . suicidal preoccupation)" or "inability to function in almost all areas . . . ." (Id.)

VA assessed plaintiff with a GAF score of 31[9] and awarded plaintiff 100% disability benefits. (Id.)  The VA Rating Decision reflected that in his 1998 examination plaintiff's mood was dysphoric and his affect slightly blunted.  (R. at 191.)  Plaintiff reported problems with concentration and attention, in addition to sleep disturbance and severe depression.  (Id.)  On occasion, plaintiff reported that his depression was so severe that he could not leave his bed and was unable to perform his daily activities.  (Id.)  Plaintiff also commented on his angry outbursts, irritability, and "inability to sustain significant interpersonal relationships."  (Id.)  Based upon these findings, plaintiff was diagnosed with "[m]ajor depressive disorder, recurrent, with a history of psychotic features and a GAF score of 31."  (Id.)

In December 1998, plaintiff stated to his psychiatrist, Dr. Kelly, that he felt much better about his life after he separated from his wife and entered a new relationship.  (R. at 321.)  He attributed his period of aggression to his failure to take his medications and he reported he had resumed taking his medications.  (Id.)  Dr. Kelly made no adjustments to the plaintiff's medications.  (Id.)  As of February 1999, plaintiff reported to Dr. Kelly that he was "slightly down," while contemplating breaking up with his girlfriend.  (Id.)  Dr. Kelly instructed plaintiff to continue with his medications, without modification.  (Id.)  In the months that followed, plaintiff reported several times that his mood was good and that he was doing well.  (R. at 319-20.)  On July 28, 1999, plaintiff denied that he was depressed.  (R. at 319.)  The next day, plaintiff spoke about the improvement in his mood, as well as his satisfaction with his recent weight loss.  Id.  In October 1999, plaintiff remarked that he was "doing extremely well," after having met a woman

---

[9] Id.

whom he moved in with and planned to marry. (R. at 318.) Dr. Kelly commented that plaintiff's mood was a "little accelerated," but made no modifications to his medications. (Id.)

In the summer and fall of 2000 plaintiff spent time in Arizona and returned to Pittsburgh in January 2001. (R. at 313.) He intended to marry his girlfriend sometime in the summer 0f 2001. (Id.) Dr. Kelly concluded that plaintiff appeared to be doing "quite well," and made no adjustments to his medications. Id.

On January 28, 2001, plaintiff was referred for a second consultative examination performed to a psychologist, Lanny Detore, Ed.D. (R. at 201-07.) Dr. Detore in his psychological evaluation report noted that plaintiff was an individual with "major depressive disorder, recurrent with previous psychotic features, moderate symptomatology." (Id. at 204.) Additionally, Dr. Detore determined that plaintiff suffered from posttraumatic stress disorder regarding the physical abuse he suffered as a child. (Id. at 205.) Dr. Detore opined that plaintiff's social anxiety would make social interaction within the work setting difficult. (Id.) He noted that plaintiff would have difficulty remembering and completing assignments within the work setting. (Id.) Dr. Detore concluded that plaintiff's ability to concentrate and maintain simple household routine tasks was adequate, despite the plaintiff's need for those tasks to be written down. (Id.)

On February 13, 2001, Sanford Golin, Ph.D., reviewed the plaintiff's file, but did not examine him. (R. at 212-25.) Dr. Golin concluded that plaintiff's severe mental impairments resulted in a moderate restriction of activities of daily living, as well as moderate limitations in his ability to maintain concentration, persistence, or pace. (R. at 222.) With respect to maintaining social functioning, however, Dr. Golin cited marked difficulties. (Id.) Dr. Golin noted the VA's

determination of plaintiff's 100% disability and that plaintiff suffered from severe depression and bipolar disorder. (R. at 224.)

In November 2001, Dr. Karen Kelly noted that although plaintiff had been "plagued by disruption in his mood," he had been doing "reasonably well." (R. at 309.)

*Discussion*

Under Title XVI of the SSA, a disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(B).

In order to make a disability determination under the SSA, a five-step sequential evaluation must be applied. 20 C.F.R. §§ 404.1520, 416.920. The evaluation consists of the following stages: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920; <u>Sykes v. Apfel</u>, 228 F.3d 259, 262-63 (3d Cir. 2000). If the

plaintiff fails to meet the burden of proving the requirements in the first four steps, the administrative law judge may find that the plaintiff is not disabled. Burns v. Burnhart, 312 F.3d at 119. The Commissioner is charged with the burden of proof with respect to the fifth step in the evaluation process. Id.

In the instant case, the ALJ found: (1) plaintiff has not engaged in substantial gainful activity since the alleged onset of disability on January 10, 1997[10]; (2) plaintiff suffered from mental impairments which are severe; (3) these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) plaintiff cannot return to any past relevant work; and (5) there were jobs in the national economy that plaintiff can perform. (R. at 240.)

In the March 14, 2005 decision, the ALJ assessed plaintiff's residual functional capacity ("RFC") and determined that plaintiff had the following non-exertional impairments: plaintiff could perform no more than simple, repetitive tasks; plaintiff required incidental interaction with the public, including no team-type activities; plaintiff could perform no high stress type work, involving high quotas or close quality production standards; and plaintiff required routine work processes in a routine work environment. (R. at 240.) The ALJ concluded that plaintiff had no exertional limitations and was able to perform work functions at all exertional levels. Id.

Based upon plaintiff's age, education, work history, RFC, and the VE's testimony, the ALJ concluded that plaintiff was unable to perform his past relevant work. There were, however, a number of jobs in the national economy that plaintiff could perform, despite his impairments. (R. at 240.) The work included light employment as a stack clerk, office cleaner, and hotel/motel

---

[10]As discussed previously, the amended alleged onset date was December 16, 1997.

cleaner. (R. at 240.) Accordingly, the ALJ concluded that the plaintiff was not disabled prior to September 7, 2001. (R. at 240.)

In disputing the ALJ's conclusion that he is not disabled, plaintiff raised two arguments. Plaintiff argued that the ALJ erred 1) in refusing to give substantial weight to the 100% disability determination of the VA; and 2) in relying on a hypothetical question posed to the VE which did not accurately portray plaintiff's non-exertional impairments. Defendant argues that the ALJ did not err because the ALJ's decision is supported by substantial evidence. Each argument made by plaintiff will be considered.

### *I. Whether The ALJ Properly Weighed the Disability Determination of the VA*

Plaintiff contends that the ALJ failed to accord proper weight to the rating decision of the VA that plaintiff was 100% disabled. The United States Court of Appeals for the Third Circuit has recognized that the findings of other government agencies are entitled to substantial weight. Kane v. Heckler, 776 F.2d 1130, 1135 (3d Cir. 1985) (administrative law judge did not consider the determination of the VA). The court of appeals, however, has also recognized that the findings of other agencies are not binding on the Commissioner, but "are entitled weight and must be considered." Fowler v. Califano, 596 F.2d 600, 603 (3d Cir 1979); see Lewis v. Califano, 616 F.2d 73, 76 (3d Cir. 1980) (evidence of another agency is entitled to substantial weight and shifts the burden to the Commissioner "to prove non-disability"). A determination of disability under the VA standard, is not conclusive and does not mandate a determination of disability under the social security disability criteria. 20 C.F.R § 404.1504.

The record reflects that the ALJ considered the VA determination in the September 6, 2001 decision and found the VA determination was grounded on scant basis. The ALJ also

11

considered that the finding of a GAF score of 31 in September 1998 was not consistent with other medical evidence of record.  The ALJ's decision to accord little weight to the VA's 100% disability determination is supported by Dr. Kelly's December 1998 treatment note following plaintiff's September 1998 VA examination, which was the basis for the VA's finding of disability.  Plaintiff admitted to Dr. Kelly that since his last appointment in May1998, he stopped taking his medication.  This admission provides insight into why plaintiff's condition quickly went from "reasonably well," to dismal as of September 1998.  (R. at 170, 321.)  Additionally, at the time of the VA examination, plaintiff was living with an alcoholic wife who caused him stress.  (R. at 321, 326, 328-29.)  Plaintiff stated to Dr. Kelly that he "threw his alcoholic wife out of his home" and "felt much better about his life situation now that he is back on his medications."  (R. at 321.)  Plaintiff commented several other times that his medication "helped a great deal."  (R. at 163-64.)  Tellingly, no significant changes were made to plaintiff's medications between April 1997 and September 2001.  (R. at 169-71, 309, 313, 318-21, 328-29.)

      Plaintiff contends that the ALJ erred in not giving the VA determination substantial weight because it was supported by the conclusions of Dr. Berschling and Dr. Detore.  The ALJ, however, recognized inconsistencies in the record, as well as plaintiff's variable condition.  The ALJ explained why he allotted the opinions of plaintiff's non-treating physicians, Dr. Detore and Dr. Berschling, little weight:  they were unable to provide a "valid overriding picture"of plaintiff's mental condition.  (R. at 238.)  Based upon a review of the record as a whole, the court concludes that the ALJ considered the VA determination and that substantial evidence supports the ALJ's decision to award little weight to that determination.

### *II. Whether the ALJ's Hypothetical to the Vocational Expert Was Supported by Substantial Evidence*

"In disability determination proceedings, an ALJ often relies on vocational expert testimony that focuses on one or more hypothetical questions posed by the ALJ." Charlton v. Barnhart, 398 F.Supp.2d 295, 303 ( D.Del. 2005). An administrative law judge's hypothetical posed to a vocational expert must reflect all of the claimant's impairments that are supported by the record or it cannot be considered substantial evidence. Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004).

In the instant case, the ALJ reviewed the medical evidence and asked the VE to consider an individual that was younger than 45 years of age and that:

> has a high school education and the work experience that you have described and defined. Let's assume further that he has no exertional limitations that would be vocationally significant or otherwise affect his ability to work. However, he does have non-exertional limitations that would limit him to simple and repetitive type tasks that did not require more than incidental interaction with the public. He would not be able to engage in team-type activities. He would not be able to engage in high-stress type work, which I will define as work involving high quotas or close quality production standards. He would require routine work processes in a routine work environment.

(R. at 415-16.) The VE testified that under these restrictions, plaintiff would not be able to return to any of his previous jobs. Id. at 416. The VE testified, however, that there were a number of light exertional level jobs that plaintiff could perform, despite his impairments, including employment as a stock clerk (193,000 jobs nationally), office cleaner (260,000 jobs nationally), and hotel/motel cleaner (128,000 jobs nationally). Id. In reliance upon the VE's testimony and the evidence of record, the ALJ returned a finding of "not disabled." (R. at 239.)

Plaintiff contends that additional functional limitations should have been included in the ALJ's RFC assessment which formed the basis for the hypothetical. Substantial evidence, however, supports the ALJ's findings concerning plaintiff's non-exertional limitations and their effects on plaintiff's RFC. The ALJ reviewed the records of Doctors Kelly, Detore, Berschling, and Schiller and considered other medical evidence of record including plaintiff's treatment records. The ALJ determined that the record reflects plaintiff's good results from counseling and medication. (R. at 163-64, 166, 170, 309, 313.) The court concludes that the ALJ's RFC assessment is supported by substantial evidence.

The ALJ's hypothetical included the limitations supported by the record. The ALJ recognized plaintiff's "Difficulties in Maintaining Social Functioning," as well as plaintiff's "Difficulties in Maintaining Concentration, Persistence, and Pace." The VE was able to identify light exertional level jobs existing in the national economy in large numbers which plaintiff could perform. By reason of substantial evidence of record supporting the limitations included in the hypothetical posed by the ALJ to the VE, the ALJ did not err in relying on the VE's response to the hypothetical.

## *Conclusion*

Based upon the evidence of record, the parties' arguments and supporting documents filed in support and opposition thereto, this court concludes that substantial evidence supports the ALJ's finding that the plaintiff is not disabled. The decision of the ALJ denying plaintiff's application for DIB is affirmed.

Therefore, plaintiff's motion for summary judgment (Doc. No. 9) is **DENIED**, and defendant's motion for summary judgment (Docket No. 11) is **GRANTED.**

**IT IS ORDERED AND ADJUDGED** that judgment is entered in favor of defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff, Elmer E. Morrow.

The clerk shall mark this case as closed.

By the court,

/s/ Joy Flowers Conti
Joy Flowers Conti
U.S. District Judge

Dated: September 22, 2006

cc: Counsel of Record